UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEITH J. MILLER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-0825** |
| **NEWELL NORMAND, ET AL.** | **SECTION: "I"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. On March 30, 2010, the Court conducted a hearing pursuant to *Spears v. McCotter*[1], and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. No. 13. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

I.   **Factual Summary**

The plaintiff, Keith J. Miller ("Miller"), is an inmate housed in the Jefferson Parish Correctional Center ("JPCC") in Angie, Louisiana.[3] Miller filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Newell Normand, Sheriff of the Jefferson Parish Sheriff's Office, ("Sheriff Normand"), Deputy Chief Penouilh[4], the Warden ("Warden Penouilh"), and D. Robertson[5], the law librarian ("Robertson") of JPCC. Miller alleges that he requested access to the law library through a request form and that request was never answered. He further contends that none of his requests to the law library have been answered. He therefore contends that the defendants violated his right of access to the Courts and seeks a change in the procedure through securing monetary damages.

II.   **Spears Hearing**

On March 30, 2010, the Court conducted a *Spears Hearing*. During the course of the hearing, Miller testified that he first attempted to gain access to the library on or about February 3 or 4, 2010. Miller testified that he also made additional requests on or about February 9 and February 19, 2010. Miller stated that he was finally permitted to go to the library three days before his scheduled court date of March 3, 2010.

When he came to the prison library, Miller testified that the librarian, Robertson, informed him that the charges against him had been dropped. Miller, at first, did not agree with Robertson. Robertson then informed Miller that because the charges had been dropped, he would have to pay

---

[3]Miller filed this suit on March 2, 2010. ( R. Doc. 1)

[4]On April 13, 2010, the Clerk of Court corrected the name of defendant Deputy Chief Penouilh to Deputy Chief, Sue Ellen Penouilh. (R. Doc. 8.)

[5]On April 19, 2010, the Clerk of Court corrected the named of D. Robertson on the docket sheet to reflect Dennis Robertson as the proper name of the defendant. (R. Doc. 8.)

a fee in order to utilize the library and that Miller should save his money.  Miller testified that he then took the librarian "at his word" and did not use the library.  However, at his March hearing, Miller was informed that the charges had not been dropped against him.

After his court appearance, Miller again submitted three separate requests to use the law library.  After three weeks, he was finally permitted to enter the law library with "a bunch of people."  Miller testified that he had to sign a blank money waiver for his library use that he left with Robertson.  Miller contends that he requested from Robertson statutes, case law, and answers to approximately four questions.  Miller sought this information in order to file motions in his criminal case in an attempt to get certain charges dismissed.  Miller testified that as a result of the failure of Robertson to provide this information, he filed a grievance which remains pending.  Miller also testified that if he were to receive the information requested, his complaint would be resolved.

During the hearing, Miller acknowledged that he is represented by defense counsel from the Indigent Defense Board for the criminal charges against him, including, but not limited to, being a convicted felon in possession of a firearm and civil burglary of a dwelling.  Miller contends that he was attempting to do research on his own behalf that he hoped he could use to submit a motion to the criminal court judge.  Miller testified that his next court date was April 14, 2010.

Miller alleges that Sheriff Normand hired Robertson and should be held liable for his negligence.  He further testified that Warden Penouilh should be held liable because she runs the jail.  Miller also claims that Robertson should be held liable because he is incompetent and is "too slow" because it took him three (3) weeks to gain access to the law library.  Miller also claims that Robertson informed Miller that he had to use certain "code words" in his request to utilize the law library.

As a followup to the *Spears Hearing*, counsel for the defendant advised the Court that the only written request Robertson had from Miller was dated March 29, 2010. In the request, Miller requested five (5) copies of a bond reduction form and a copy of a Motion to Suppress a Confession. Counsel informed the Court that the information would be provided to Miller in the next several days.

### III.   Standards of Review for Frivolousness

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176

(5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**IV.    Analysis**

    **A.    Supervisory Liability**

Miller complains that Robertson is slow in the delivery of services and incompetent. He complains that while he is represented by indigent defense counsel, his requests for information from the law library have not been forthcoming such that his right of access to the law library has been denied.

In order to succeed on a claim under § 1983, a plaintiff must prove both the constitutional violation and action that was taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981). A state actor sued in his or her official capacity is not considered a person for purposes of suit under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

In this case, Miller complains that the Warden Penouilh and Sheriff Normand should be held liable because they are supervisors over the jail and should be held liable for the denial of his access to the courts as a result of the poor delivery of services by the prison's law librarian, Robertson.

However, a supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional

violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

Supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). An official policy is:

1. a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] . . . or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

In this case, Miller has not alleged that either Warden Normand or Sheriff Penouilh were directly involved in the denial of his right of access to the courts. Miller instead seeks to hold these defendants liable because they were the ranking supervisors over Robertson.

Further, Miller has not alleged or suggested in any way that Sheriff Normand or Warden Penouilh promulgated a policy or custom which led to the problem about which he complains. He therefore has failed to state a claim of supervisory liability against Warden Penouilh and Sheriff Normand. Therefore, his claims against Warden Penouilh and Sheriff Normand as supervisory

officials should be dismissed as frivolous and/or for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

**B.     Access to Law Library**

In this case, Miller alleges that his right of access to the Court was violated because he sought information from the law librarian who wrongly told him that he did not need to research certain charges because they were dismissed. Miller complains that he therefore went to his criminal court appearance without the research and learned further that the charges against him had not been dropped. Miller also complains that, subsequent to him being notified that the charges against him had not been dropped, he again sought access to the law library and was required to wait longer than he feels was necessary to receive the information.

Prisoners have a First Amendment right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Dickinson v. Tex., Fort Bend Country*, 325 F. App'x 389, 390 (5th Cir. 2009); *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998); *Degrate v. Godwin,* 84 F.3d 768, 768-69 (5th Cir. 1996); *Sandoval v. Johns*, 264 F.3d 1142, 2001 WL 822779, at * 1 (5th Cir. June 29, 2001)(Table, Text in Westlaw). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.

In order to state a claim that his constitutional right of access to the courts was violated, Miller must allege or "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). He also must demonstrate that his position as a litigant was actually prejudiced. *Lewis v. Casey*, 518

U.S. 343, 356 (1996); *Cochran v. Baldwin*, No. 05-20100, 2006 WL 2418945, at * 1 (5th Cir. Aug. 18, 2006); *Smith v. Polunsky*, 233 F.3d 575, No. 00-40362, 2000 WL 1468717, at *1 (5th Cir. Sep. 5, 2000) (Table, Text in Westlaw); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996). The inmate must demonstrate that the acts of the prison officials prevented his efforts to pursue a non-frivolous legal claim.

"[W]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir. 1996). Of course, prisoners possess no constitutionally-protected right to file frivolous lawsuits. *See Johnson v. Rodriguez*, 110 F.3d 299, 310-13, 316 (5th Cir. 1997), *cert. denied*, 522 U.S. 995 (1997).

The Court, in considering the issue before it, finds that the claim against Robertson is frivolous because Miller cannot point to any prejudice that resulted from the delay in responding to his request.[6] In fact, his testimony is that the criminal court continued the proceeding. In the meantime, the Court requested that the librarian provide him with the documents as requested and Miller indicated that once he received the information, his claim would be resolved. Since that time, the Court has not received any additional communications from Miller nor is there any indication that the delay prejudiced his criminal proceeding. Consequently, the Court finds that the claims filed

---

[6]The Court also notes that the claim is frivolous because the fact that Miller was represented by counsel in his criminal proceedings satisfies his right of access to the courts as guaranteed by the Constitution and interpreted by the Supreme Court in *Bounds v. Smith*, 430 U.S. 817 (1977). *Jones v. Stephen*, 2006 WL 1997475 (E.D. La. May 09, 2006)(Roby, J.); *Schrier v. Halford*, 60 F.3d 1309, 1313-1314 (5th Cir. 1995); *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986); *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir. 1985).

against D. Roberston, the law librarian, should be dismissed as frivolous and/or for failure to state a claim pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

**V.     Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Millers' § 1983 claims against the defendants, Newell Normand, Sheriff of the Jefferson Parish Sheriff's Office, Deputy Chief Sue Ellen Penouilh, the Warden of the Jefferson Parish Correctional Center, and D. Robertson, the law librarian of the Jefferson Parish Correction Center, be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

New Orleans, Louisiana, this 8th day of December, 2010.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.